[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12826

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EVERETT JEROME TRIPODIS,
a.k.a. Everett Tripodis,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00240-TWT-LTW-1

_____

Before WILSON, GRANT, and LAGOA, Circuit Judges.

Wilson, Circuit Judge:

Everett Tripodis appeals his sentence from the Northern District of Georgia. First, Tripodis argues that the government violated his negotiated plea agreement by requesting imposition of supervised release when none was contemplated within the four corners of the agreement. Second, because the agreement is binding on the government and the court once it is accepted, he also claims that the court erred in imposing supervised release as an additional punishment not considered in the plea agreement. After reviewing the record, and with the benefit of oral argument, we affirm.

## I.    Background

Tripodis was engaged in a coordinated scheme of stealing and reselling luxury vehicles, including Audis, Bentleys, and Corvettes. To resell the vehicles without being caught, Tripodis would obtain vehicle registration information (VIN) for similar automobiles to the ones that were stolen. Tripodis would use those VINs to gain access to the similar vehicles' associated titles. These titles would then be presented with the stolen vehicles to legitimize them for selling.

Tripodis was ultimately caught, and a grand jury returned a superseding indictment charging Tripodis with five counts: (1) one count of general conspiracy in violation of 18 U.S.C. § 371; (2) three counts of interstate transport of a stolen vehicle in violation of 18 U.S.C. § 2321; and (3) one count of tampering with a VIN in

violation of 18 U.S.C. § 511(a). After many pre-trial proceedings, Tripodis pled guilty to the conspiracy offense pursuant to a negotiated plea agreement. In exchange, the government agreed to dismiss the remaining charges in the indictment.

The plea agreement included a binding sentencing recommendation under Federal Rule of Criminal Procedure 11(c)(1)(C), requiring the district court to imprison Tripodis for 60 months "as the appropriate total custodial sentence in this case" if the court accepted the plea agreement. The agreement contained stock language regarding the statutory penalties that Tripodis was subject to under 18 U.S.C. § 371, including a supervised release penalty not to exceed three years. However, no other mention of supervised release was contained within the agreement.[1]

At the plea hearing, the court established that Tripodis knew he was under oath and must answer truthfully, that he was entering a knowing and voluntary plea, and he would ask the court questions if he did not understand. During questioning, Tripodis was asked if he understood that the plea agreement contained a waiver

---

[1] As is standard, the plea agreement contained a standard limited appeal waiver. The waiver states that Tripodis waives the right to appeal his conviction and sentence and to collaterally attack the same on any ground, except if (1) the district court conducted an upward variance in sentencing, or (2) his counsel was ineffective. Tripodis signed the agreement twice, confirming there were no other understandings or agreements outside the written plea agreement.

of appeal. Tripodis responded that he did and acknowledged that he was waiving his right to appeal.

The court repeatedly notified Tripodis during the plea hearing that Tripodis could potentially receive supervised release as a part of his sentence. Regarding the statutory penalties, the court specifically asked if Tripodis understood that the court could sentence him to a three-year supervised release term. Tripodis affirmed he understood. The court inquired again: "Do you understand that you may be sentenced to a term of supervised release, and that, if you violate the conditions of release, you can be sent to prison for the entire term of supervised release?" Tripodis again responded in the affirmative. The court further clarified that it was only bound by the 60-month imprisonment condition within the plea agreement through the following exchange:

> THE COURT: Other than the provision of the Plea Agreement which gives you the right to withdraw your guilty plea if I should sentence you to more than 60 months in prison, do you understand that if the sentence is more severe than you expect it, you will still be bound by your plea of guilty and will have no right to withdraw it?
>
> TRIPODIS: Yes, sir.
>
> . . .
>
> THE COURT: Do you understand that if I do not accept the sentencing recommendations in your Plea Agreement, you will still be bound by your plea of guilty and will have no right to withdraw it?

TRIPODIS: Yes, sir.

Tripodis' counsel interjected that, because the plea was binding, the court must accept the government's recommendation or allow Tripodis to withdraw the plea. The court responded: "That's as to the 60-month sentence only, though," to which Tripodis' counsel replied, "Yes, Your Honor. I'm sorry. I thought that's what you asked." Nothing more was mentioned regarding supervised release at the plea hearing.

At sentencing, the government argued for imposition of a three-year supervised release term. In response, Tripodis' counsel requested foregoing supervised release since Tripodis was already receiving the statutory maximum prison sentence. Tripodis' counsel gave no indication that it believed the government was breaching the plea agreement by requesting supervised release, or that the district court would be breaching the plea agreement by imposing such a sentence; counsel simply argued for no term of supervised release. Ultimately, the court decided to impose the maximum supervised release term of three years. After sentencing, Tripodis' counsel stated that Tripodis objected "simply on the basis that the binding plea did not contemplate supervised release," which was overruled. Tripodis timely appealed.

## II.　Analysis

Whether the terms of a plea agreement have been breached is reviewed de novo. *United States v. Horsfall*, 552 F.3d 1275, 1281 (11th Cir. 2008) (per curiam).[2]

### A.　*Government Breach of Plea Agreement*

To evaluate whether the government breached a plea agreement, we "determine the scope of the government's promises" and ask "whether the government's actions [were] inconsistent with what the defendant reasonably understood when he entered his guilty plea." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004) (quotations omitted). While plea agreements are interpreted in the same vein as contracts, we do not apply a "hyper-technical reading" or "a rigidly literal approach in the construction of the language." *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990) (quotations omitted). Notably, a plea agreement's silence on an issue does not bind the government to any promise. *In re Grand Jury Proceedings*, 819 F.2d 984, 986 (11th Cir. 1987).[3]

---

[2] The government moved to dismiss this appeal based on the appeal waiver in Tripodis' plea agreement. An appeal waiver does not bar a defendant's claim "that the government breached the very plea agreement which purports to bar him from appealing." *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1284 (11th Cir. 2015). Accordingly, we deny the motion.

[3] The Advisory Committee Notes to Rule 11(c)(1)(C) support this reading, stating that in a binding plea agreement, "the government and defense have actually agreed on what amounts to an appropriate sentence or have agreed to *one of the specified components*." (emphasis added); *see Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005) ("[I]nterpretations in the

When the plea agreement language is ambiguous, it is construed against the government. *Id.* at 1105–06. We do so because a plea agreement is a "waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea." *Jefferies*, 908 F.2d at 1523 (internal quotations omitted). We examine extrinsic evidence of the parties' intent to help dispel the ambiguity and interpret the plea agreement language. *Copeland*, 381 F.3d at 1106. Therefore, we must first ask whether the agreement is ambiguous and, if so, we must decide whether to impose the agreement on the defendant. *Id.*

If the district court accepts a plea agreement and a defendant is denied the benefit of his bargained-for agreement, he is constitutionally entitled to relief. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). Relief follows in one of two forms: (1) specific performance of the plea agreement, or (2) the ability to withdraw the plea. *United States v. Yesil*, 991 F.2d 1527, 1532–33 (11th Cir. 1992).

Tripodis argues that his reasonable understanding was that the government would recommend what was written in the plea agreement—60 months' imprisonment (and his alleged underlying assumption that there would be no supervised release). Thus, when the government recommended more than what was

Advisory Committee Notes are nearly universally accorded great weight in interpreting federal rules." (quotation omitted)).

contemplated in the agreement, this constituted breach. For relief, Tripodis requests vacatur of his sentence and remand for specific performance of his plea agreement. In response, the government claims that the plea agreement was unambiguous as it only bound the parties to jointly recommend a "total custodial sentence," and therefore should not be construed against it. The government further disclaims any breach because it followed through on its promise of recommending 60 months' imprisonment.

Tripodis' argument ultimately fails. The plea agreement was unambiguous as to the government's promises, thereby satisfying first prong of our inquiry and foreclosing the second, dooming Tripodis' argument. Even if we were to find the agreement ambiguous, the record demonstrates Tripodis understood his plea agreement did not bar the government from recommending supervised release.

Here, the plea agreement was unambiguous: the government promised to recommend a total custodial sentence of 60 months. There is no promise within the plea agreement regarding supervised release. The agreement's silence did not bind the government to any promise regarding supervised release. Therefore, the government was free to recommend a supervised release term.

Further, relevant extrinsic evidence demonstrates Tripodis' recognition that he could be subject to supervised release. Tripodis' and his counsel's statements, both at the initial entry of the plea and at sentencing, evince that understanding. Importantly, the court asked Tripodis if he understood that the court could sentence

him to a three-year supervised release term, which Tripodis stated he understood. The court clarified that it was only bound by the 60-month recommendation for imprisonment. Further, when the government argued for supervised release at sentencing, counsel merely argued that Tripodis should not receive supervised release since he was serving the statutory maximum prison sentence. Notably, counsel's arguments were void of accusations that the government was acting nefariously or breaching an agreed-upon understanding.

While the question of breach here is not frivolous, both Tripodis' affirmations at the plea entry stage and the arguments brought by his counsel indicate that Tripodis understood (1) the consequences of pleading guilty and (2) that he could be subject to supervised release. If the government had stated in the plea agreement that it would not recommend supervised release, the recommendation of the same would qualify as breach. However, in the absence of a supervised release provision in the plea agreement, there was no obligation for the government to breach. Therefore, Tripodis' claim fails.

We pause to note that, in the future, the government should make it clear in these circumstances what it is promising—and what it is not—to the defendant. We have previously observed that, unfortunately, defendants can be "unintentionally misled" when the government does not explicitly state in the plea agreement the extent of its promises to or requirements of the defendant. *In re Grand Jury Proceedings*, 819 F.2d at 986; *United States v. Al-*

*Arian*, 514 F.3d 1184, 1193 (11th Cir. 2008) (per curiam). As the government is the drafter of the plea agreement, it should dispel any alleged ambiguities by clearly indicating whether it intends to recommend supervised release.

### B.  District Court Breach of Plea Agreement

The district court's factual findings regarding the scope of a plea agreement will be set aside only if they are clearly erroneous. *Al-Arian*, 514 F.3d at 1191. In addition to the government and the defendant, the negotiated plea agreement is binding on the court. *Yesil*, 991 F.2d at 1532.

Tripodis argues that the 60-month total custodial sentence was binding on the court, and the court impermissibly modified the plea agreement by adding a term of supervised release.

For the reasons established above, Tripodis' argument fails. As the district court noted in its questioning of Tripodis, it was only bound to impose the 60-month custodial sentence. Because supervised release was not contemplated within the plea agreement, the government was free to recommend it. Similarly, because the district court was not bound by a supervised release provision within the plea agreement, it was within the court's discretion whether to impose supervised release. Therefore, the district court did not clearly err, and Tripodis' claim fails.

### III.    Conclusion

For the foregoing reasons, we affirm Tripodis' sentence.

**AFFIRMED.**