[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11276

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ERROL MICHAEL GILYOT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00082-TFM-B-3

_____

Before NEWSOM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Errol Gilyot appeals his 96-month sentence for conspiracy to commit bank fraud. He argues (1) that the District Court clearly erred in finding that he continued to engage in bank fraud after being released from pretrial custody and (2) that the Government breached the plea agreement by informing the District Court of his continued criminal conduct. We affirm.

## I.

Gilyot was indicted for conspiracy and substantive bank fraud in connection with a scheme involving stolen checks, forged documents, and fraudulent ATM withdrawals. He pleaded guilty to the conspiracy charge under a written plea agreement. Under that agreement, the Government would recommend a sentence at the low end of the applicable Guidelines range and dismiss the other charge. The agreement also preserved both parties' rights to allocute at sentencing.

While released on bond, Gilyot allegedly engaged in additional fraudulent conduct. According to the Government's sentencing memorandum and supporting exhibits, Gilyot exchanged messages with a co-conspirator about stolen checks, shared images of counterfeit checks, and discussed the use of bank accounts to deposit those checks and split the proceeds. Investigators tied this activity to Gilyot through his email, Instagram handle, and text exchanges extracted from a co-conspirator's phone.

Gilyot's presentence investigation report (PSR) calculated a total offense level of 24, a criminal history category of I, a Guidelines imprisonment range of 51 to 63 months, and a Guidelines range of supervised release of 2 to 5 years. At sentencing, the District Court explained that it was varying upward because of Gilyot's "continued commission of crimes while he was on release." It sentenced Gilyot to 96 months' imprisonment, followed by 5 years of supervised release.

Gilyot timely appeals.

## II.

### A.

Gilyot first argues that the District Court clearly erred in finding that he continued to engage in criminal conduct while on pretrial release. He contends that the evidence relied upon by the Government was circumstantial and insufficient to establish his renewed participation in the fraudulent scheme.

We review the District Court's findings of fact for clear error. *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017) (citation omitted). "For a factual finding to be clearly erroneous, this [C]ourt, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).

"When a defendant challenges one of the factual bases of his sentence . . . the Government has the burden of establishing the disputed fact by a preponderance of the evidence. This burden

must be satisfied with reliable and specific evidence." *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) (citation and internal quotation marks omitted). That standard is met when the court finds the fact more likely true than not. *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004).

The District Court's finding that Gilyot resumed criminal conduct while on pretrial release was supported by multiple sources of reliable evidence. Instagram records tied to Gilyot's known alias included discussions of continued fraud, references to sentencing timelines, and images of counterfeit checks. And text messages from an account linked to Gilyot's Google email address contained similar content, including plans to retrieve fraudulent checks. Taken together, this evidence supported the District Court's finding by more than a preponderance.[1] The Court did not clearly err.

*B.*

Gilyot next contends that the Government breached the plea agreement by informing the District Court of his post-bond activity. He argues that the Government's disclosure undermined its

---

[1] On appeal, Gilyot seems to take fault with the search of his co-conspirator's phone because it was "performed by a city cop" who "[did] not possess the requisite knowledge, skill, and experience to extract data from cell phones." But at the sentencing hearing, Gilyot's counsel said that "the evidence offered today was proper." That concession undercuts his current argument, as a party cannot waive an objection below and revive it on appeal. *See United States v. Lewis*, 492 F.3d 1219, 1221 (11th Cir. 2007) ("[W]hile forfeited claims are reviewed under Rule 52(b) for plain error, waived claims are not.").

24-11276                Opinion of the Court                5

sentencing recommendation and violated the spirit, if not the letter, of the plea agreement.

We review de novo whether the Government breached a plea agreement.[2] *United States v. Tripodis*, 94 F.4th 1257, 1261 (11th Cir. 2024) (citation omitted). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996) (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 499 (1971)).

The plea agreement here provided that "[t]he United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court." It also preserved the Government's right to allocute.

At sentencing, the Government stood by its commitment: it agreed with the Guidelines calculation in the PSR and recommended a sentence at the low end of the applicable range. At the same time, it told the Court about evidence that Gilyot had committed criminal conduct after his release on bond. In doing so, the Government did not repudiate its recommendation but exercised its right—and its duty—to ensure the Court received complete and accurate information bearing on the 18 U.S.C. § 3553(a) factors.

---

[2] While claims of breach are often raised on collateral review, we may resolve them on direct appeal where, as here, the record is sufficiently developed. *Cf. United States v. Al-Arian*, 514 F.3d 1184, 1190–91 (11th Cir. 2008).

The prosecutor explained,

[We want] to make the Court aware of these circumstances, because one of the factors for the Court to consider is risk of recidivism, respect for the law, the other 3553(a) factors. . . Mr. Gilyot was released on conditions . . . that required him not to commit any additional violations of federal, state, or local law. But based on the evidence that we've put before the Court . . . it appears that the defendant repeatedly violated that by continuing to engage with other folks knowingly in the production of counterfeit checks, the theft of mail, et cetera. . . . So, all things considered, Your Honor, as far as the defendants in this case go and the culpability, we are hard pressed to say that Mr. Gilyot isn't near the top of the list in terms of culpability in the scheme.

That said, he did spare the United States the expense of a trial. He's received acceptance of responsibility credit, notwithstanding some significant concerns that we have with respect to his continued criminality and recidivism.

And so we're not at the point where the United States is withdrawing its Plea Agreement or not giving the defendant the benefit of his bargain. We think that's appropriate. But we would be remiss if we didn't put the Court on notice of potential significant continued criminality by the defendant while on release conditions.

In response to Gilyot's contention at sentencing that the Government may have violated the plea agreement, the Court said, "make no mistake, as officers of the court, if [the Government] did not advise me of significant matters such as this, they would have a separate issue with me." And the Government made clear that, "We have not rescinded the Plea Agreement, nor did we depart from the recommendation that we set forth therein." This is supported by the Government's sentencing memorandum filed before the sentencing hearing, which discussed the alleged crimes at issue but still recommended a 51-month sentence.

Gilyot's counsel framed the Government's conduct as a breach akin to that in *Santobello v. New York*, where a prosecutor affirmatively broke a promise not to make any sentencing recommendation. 404 U.S. at 262–63, 92 S. Ct. at 499. But this case is distinguishable. Here, the Government fulfilled its express commitment to recommend a low-end Guidelines sentence. Unlike in *Santobello*, there was no repudiation of a promise nor an affirmative reversal in position; rather, the Government exercised its preserved right to allocute and provided relevant information concerning the § 3553(a) factors.

At bottom, Gilyot's argument is not that the Government failed to *recommend* a low sentence—it did—but that it failed to *advocate* for one by minimizing adverse facts. That distinction does not amount to a breach of the plea agreement. Said differently, a plea agreement that calls for a recommendation does not obligate the Government to minimize or ignore adverse facts, especially

where the agreement preserves the Government's right to allocute and where the defendant has violated conditions of release. *Accord United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992) ("The solemnization of a plea agreement does not preclude the government from disclosing pertinent information to the sentencing court." (citation omitted)); *see also United States v. Horsfall*, 552 F.3d 1275, 1282–83 (11th Cir. 2008)) ("Because the [plea] agreement permitted the government to introduce such information and the government did not explicitly oppose a sentence within the guideline range, the government did not violate the plea agreement.").

We find no error.

## III.

The District Court did not clearly err in finding that Gilyot resumed criminal conduct while on pretrial release, nor did the Government breach the plea agreement. The judgment is affirmed.

**AFFIRMED.**