[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13131

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DUSTIN SHANE SANDIFORD,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:21-cr-00001-JA-PRL-1

_____

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

After law enforcement officers found child pornography on appellant Dustin Shane Sandiford's cell phone, he was charged with several crimes, including possessing child pornography and producing child pornography. In the criminal case, Sandiford moved to suppress evidence found on the cell phone. The district court denied the motion, and Sandiford later pleaded guilty to producing child pornography.

On appeal, Sandiford argues that the district court erred in denying his motion to suppress. But his guilty plea, which was knowing and voluntary, waived his right to raise this issue on appeal. He argues that the plea agreement does not bar the appeal because the government breached the plea agreement. But we conclude that there was no breach. Accordingly, we affirm.

**I.**

In December 2020, law enforcement officers obtained a warrant to search Sandiford's cell phone. The search warrant authorized a forensic examination of the cell phone to identify electronically stored information, including "[a]ny and all computer software, including programs to run . . . applications . . . that may be or are used to: visually depict child pornography or child erotica." Doc. 39-1 at 29.[1] Officers executed the search warrant and seized

---

[1] "Doc." numbers refer to the district court's docket entries.

the phone. When they accessed the phone, they saw that Sandiford maintained an account with MEGA, a cloud-based file sharing and storage application based in New Zealand. Although the files associated with Sandiford's MEGA account were not saved locally on his phone, officers were able to see that the files stored on the account included child pornography. After officers executed the search warrant and seized Sandiford's cell phone, he used another device to log into his MEGA account and delete more than 17,000 files, which were approximately 95% of the total files saved on his account.

Six days after officers seized the cell phone, Sandiford was arrested and charged with possession of child pornography. Shortly afterward, agents with the Federal Bureau of Investigations working on the case learned that Ashley Hilligoss had produced a sexually explicit image of a four-year-old relative and sent it to Sandiford.[2] A grand jury returned a superseding indictment charging Sandiford with possession of child pornography, production of child pornography, and receipt of child pornography.

Sandiford moved to suppress evidence obtained from his cell phone. Although the government had obtained a warrant for the search, he argued that the officers exceeded the scope of the warrant and that the warrant failed to particularly describe the items to be seized. The district court denied the motion to suppress.

---

[2] In a separate criminal proceeding, Hilligoss pleaded guilty to producing child pornography. She is currently serving a 72-month sentence.

After the district court denied the motion to suppress, Sandiford agreed to plead guilty pursuant to a written plea agreement. Under the terms of the agreement, he would plead guilty to producing child pornography, and the government would dismiss the other charges against him. The plea agreement did not include language preserving Sandiford's right to appeal the denial of the motion to suppress.

Several provisions in the plea agreement addressed Sandiford's sentencing. The government agreed not to oppose Sandiford's request for a two-level reduction in his offense level for acceptance of responsibility. *See* U.S. Sent'g Guidelines Manual § 3E1.1(a) ("If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."). But the plea agreement specified that this obligation applied only so long as the government received "no adverse information . . . suggesting such a recommendation to be unwarranted." Doc. 95 at 4. The government also agreed to file a motion seeking an additional one-level reduction to Sandiford's offense level based on his acceptance of responsibility. *See* U.S.S.G. § 3E1.1(b). But the government agreed to file this motion only if Sandiford complied "with the provisions of . . . § 3E1.1(b) and all terms of" the plea agreement. Doc. 95 at 4. The government did not agree in the plea agreement to recommend a particular sentence. Instead, it reserved the right to make a recommendation that "it deem[ed] appropriate." *Id.* at 11.

The agreement recited that Sandiford "freely and voluntarily" entered a guilty plea. *Id.* at 15. And it provided that the written agreement was "the entire agreement between the government and" Sandiford. *Id.* at 17. It stated that "no other promises, agreements, or representations exist[ed] or ha[d] been made" to Sandiford about the plea. *Id.* By signing the plea agreement, Sandiford and his counsel certified that Sandiford had read the plea agreement and "fully underst[ood] its terms." *Id.*

A magistrate judge conducted the change-of-plea hearing. At the beginning of the hearing, Sandiford swore to tell the truth. He disclosed that he was taking prescription medications but confirmed that they did not affect his ability to make decisions. He assured the court that he was clearheaded and understood where he was, what was going on, and the importance of the plea proceedings. Counsel for the government and Sandiford advised that they had no concerns about his competence to plead guilty.

The magistrate judge then carefully reviewed the plea agreement with Sandiford. He discussed the elements of the offense of production of child pornography and the penalties that applied to this offense.

The magistrate judge also reviewed the rights that Sandiford was waiving by pleading guilty. The magistrate judge explained that by pleading guilty, Sandiford was waiving his rights to plead not guilty, have a speedy and public trial, be presumed innocent, have the government prove his guilt beyond a reasonable doubt, confront and cross-examine the government's witnesses, challenge

the government's evidence, present his own evidence and witnesses, testify at trial, and remain silent. The magistrate judge also warned that by pleading guilty Sandiford was giving up his "right to challenge the way that the government obtained the evidence it has against [him], including any statements or confessions [he] may have made," as well as his "right to challenge on appeal" the district court's rulings.[3] *Id.* at 7. Sandiford indicated that he understood that he was waiving these rights.

The magistrate judge then discussed what would occur at Sandiford's sentencing. He explained that in determining Sandiford's sentence, the district court would consider the applicable guidelines range under the United States Sentencing Guidelines, as well as "the statutory sentencing factors." *Id.* at 13. The magistrate judge added that the district court was "not bound by the guidelines" and had "authority to impose a sentence up to the maximum allowed by law." *Id.* at 14. The magistrate judge also reviewed the provisions in the plea agreement regarding downward adjustments to Sandiford's offense level for acceptance of responsibility. Sandiford confirmed that he understood these provisions.

At the change of plea hearing, Sandiford confirmed that he had signed the plea agreement. He also acknowledged that he had

---

[3] Under the plea agreement, Sandiford retained the right to appeal his sentence on certain grounds. Because he does not appeal his sentence, we discuss the sentence appeal waiver no further.

reviewed the plea agreement with his attorney and that his attorney had answered all his questions about the agreement.

Sandiford then pleaded guilty to producing child pornography. He confirmed that he was "freely and voluntarily" pleading guilty. *Id.* at 20. He also affirmed that he told the truth throughout the change-of-plea hearing.

The magistrate judge recommended that the district court accept the guilty plea. He found that there was a factual basis for the plea and that Sandiford's decision to plead guilty was made freely, voluntarily, and knowingly. The district court adopted the recommendation.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR assigned Sandiford a base offense level of 32. It then applied several enhancements based on specific offense characteristics. *See* U.S.S.G. § 2G2.1(b). The PSR applied a two-level enhancement for obstruction of justice based on Sandiford's having deleted files from his MEGA account after officers seized his phone. *Id.* § 3C1.1 It also included a three-level reduction for acceptance of responsibility. *Id.* § 3E1.1. After applying these adjustments, the PSR stated that Sandiford's total offense level was 43.

Based on his previous criminal convictions, the PSR assigned Sandiford six criminal history points, which yielded a criminal history category of III. His previous criminal convictions included a 2008 conviction for felony battery arising out of an incident in which he performed oral sex on a 13-year-old child.

Based on his total offense level of 43 and criminal history category of III, the PSR calculated his sentencing guidelines range as life. But because the statutorily authorized maximum sentence for production of child pornography is 30 years, 18 U.S.C. § 2251(e), the PSR adjusted the applicable guidelines range to 30 years. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

Before the sentencing hearing, the government filed a sentencing memorandum, requesting that the court impose a sentence of 360 months' imprisonment. It explained that Sandiford's 2008 battery conviction for the offense involving a minor scored no criminal history points because of its age. *See id.* § 4A1.2(e). But the government argued that this conviction was "highly relevant to [Sandiford's] likelihood of recidivism" because it showed that he had a "long-established sexual interest in children" and was "will-ing[] to violate the law in service of that interest." Doc. 120 at 3 (internal quotation marks omitted).

The district court held Sandiford's sentencing hearing over several days spread out over an approximately 18-month period. At the first two days of the sentencing hearing, the court considered Sandiford's objections to the PSR. He objected to several of the enhancements based on the specific characteristics of his offense; the court sustained some of these objections. *See* U.S.S.G. § 2G2.1.

Sandiford also objected to the application of the obstruction enhancement. He pointed out that the plea agreement did not include a provision allowing the government to seek this enhancement, and he argued that applying this enhancement would "essentially negate[]" the credit he was receiving for acceptance of responsibility. Doc. 159 at 52. The court overruled his objection and applied the enhancement. After resolving the objections and applying a three-level reduction for acceptance of responsibility, the court determined that Sandiford's total offense level was 37 and then calculated his guidelines range as 262 to 327 months' imprisonment.

The court then considered whether a variance was appropriate. Sandiford's attorney requested a downward variance based on the sentencing factors set forth at 18 U.S.C. § 3553(a).[4] He asked the court to consider that Sandiford had documented mental health issues, which began when he was a child; was a victim of sexual

---

[4] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

abuse when he was a child; and had a tumultuous upbringing. Sandiford allocuted at his sentencing hearing. He acknowledged that his actions were "severe" and expressed remorse. Doc. 154 at 44.

The government asked the court for an upward variance and to impose a sentence of 30 years, the statutory maximum. It sought this sentence because of Sandiford's longstanding sexual interest in children and the need to protect the public from future crimes. After the second day of the sentencing hearing, the court took the case under advisement.

Shortly before the third day of the sentencing hearing, the government moved to continue the hearing. It explained that it had recently obtained "credible evidence" that, while in jail, Sandiford had "enlisted the aid of a third party to download child pornography from accounts he controlled, smuggle it to him while he was incarcerated, and upload it to other accounts he controlled." Doc. 140 at 3. The government stated that it was in the process of serving search warrants on the service providers for those accounts. It sought a two-month continuance to obtain this evidence, which it stated would be "highly probative on whether Sandiford has accepted responsibility and what overall sentence the [c]ourt should impose." *Id.* at 4. The district court granted the government's motion and continued the sentencing hearing.

Approximately two months later, the court held the third day of the sentencing hearing. The government presented evidence about Sandiford's efforts to obtain child pornography while incarcerated. An FBI agent testified that in July 2022, officers

searched Carin Buford's cell phone and found pornographic images of one of Sandiford's female relatives, who was a minor, stored on the phone. The agent recognized the images because he had previously seen them on Sandiford's MEGA account. The agent testified that Buford met Sandiford through her son who was incarcerated at the same facility. Buford told investigators that Sandiford gave her login information and passwords for his online accounts and then directed her to download images of child pornography and mail them to him at the jail. He also gave her instructions about how to mail the images to the jail so that they would not be detected.

The government argued that Sandiford had continued to engage in criminal conduct when he attempted to obtain child pornography while incarcerated and thus should not receive a three-level downward adjustment for acceptance of responsibility. Sandiford opposed the request, arguing that under the terms of the plea agreement he was entitled to credit for acceptance of responsibility. The court rejected Sandiford's argument and found that he had "failed to withdraw from his criminal conduct, which was inconsistent with his acceptance of responsibility." Doc. 160 at 83. Without any downward adjustment for acceptance of responsibility, the court determined that Sandiford's total offense level was 40 and his guidelines range was 360 months.

At the third day of the sentencing hearing, the court announced that it was imposing a 360-month sentence. The court stated that it had considered the relevant § 3553(a) factors including

the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, and the need to protect the public. The court described Sandiford as "a brilliant but troubled and dangerous man" with a "serious criminal record and an established sexual interest in underaged girls." *Id.* at 84, 88. It found that Sandiford "coerced" Hilligoss to take a photograph of a child's genitalia and send it to him and had "preyed" on her. *Id.* at 91–92. In explaining its chosen sentence, the court recounted facts that it had learned at Hilligoss's sentencing, including that Sandiford threatened to sexually abuse the child in the same way that he had sexually abused Hilligoss if she refused to take the photograph. After pronouncing the sentence, the court stated that even if Sandiford had received a three-level reduction in his offense level for acceptance of responsibility, it would have imposed the same sentence.

Sandiford objected to the sentence. He argued that the court erred in relying on evidence from Hilligoss's sentencing hearing because he was not present at that proceeding and had no opportunity to challenge the evidence presented there. The court then stayed the sentencing and gave Sandiford an opportunity to challenge and rebut the evidence regarding Hilligoss. Over the next few days of the sentencing hearing, Sandiford presented evidence related to Hilligoss.

While these sentencing proceedings were ongoing, Sandiford moved for reconsideration of the court's denial of the motion to suppress. The court denied the motion for reconsideration.

When denying the motion, the court mentioned that Sandiford would "have a chance" to seek further review and that this issue would "be resolved at some point relatively early-on in [his] sentence." Doc. 284 at 50. Sandiford, who at this point was proceeding *pro se*, then began to discuss how he would be able to challenge the denial of his motion to suppress on appeal even though he pleaded guilty because he did not believe that he had waived his right to appeal this issue. The court cut Sandiford off, explaining, "I'm not going to get into that. That will be for the appellate court." *Id.* at 51.

In the sentencing proceedings, Sandiford also argued that the government breached the plea agreement because it had requested a 30-year sentence and that the court not give him credit for acceptance of responsibility. The court concluded that the government had not breached the plea agreement.

At the conclusion of the lengthy sentencing proceedings, the court again imposed a 360-month sentence. It imposed this sentence after considering the relevant § 3553(a) factors including the need to protect the public because Sandiford posed a serious risk of committing other crimes against children.

This is Sandiford's appeal.

## II.

On appeal, Sandiford argues that the district court erred in denying his motion to suppress evidence from the search of his cell phone, including the evidence related to his MEGA account. But

Sandiford waived his right to challenge the denial of his motion to suppress when he pleaded guilty.

"A defendant's unconditional plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (alteration adopted) (internal quotation marks omitted). The issue of whether a district court erroneously denied a motion to suppress is a nonjurisdictional issue waived by a guilty plea. *See United States v. Charles*, 757 F.3d 1222, 1227 n.4 (11th Cir. 2014). When a defendant wishes to plead guilty and preserve a nonjurisdictional issue for appeal, he must enter a conditional plea in accordance with Federal Rule of Criminal Procedure 11(a)(2). *Pierre*, 120 F.3d at 1155. A "conditional plea must be in writing and must be consented to by the court and the government." *Id*. When a defendant enters an unconditional guilty plea based on the "reasonable (but mistaken) belief" that he has preserved a nonjurisdictional issue for appeal, his plea is, "as a matter of law, not knowing and voluntary." *Id*. at 1156

Sandiford waived his right to appeal the denial of the motion to suppress because he entered an unconditional, knowing, and voluntary plea that did not preserve this issue for appeal. He says that his plea was not knowing and voluntary because he believed that he had preserved the denial of his motion to suppress for appellate review. We disagree. Notably, at the change-of-plea hearing, the magistrate judge reviewed with Sandiford the rights that

he was waiving by pleading guilty, including the right to challenge on appeal the denial of his motion to suppress. The magistrate judge explained that by pleading guilty Sandiford was giving up the "right to challenge the way that the government obtained the evidence it has against [him], including any statements or confessions [he] may have made" as well as the right to "challenge on appeal" the district court's rulings. Doc. 344 at 7. We thus reject Sandiford's argument that his plea agreement is invalid because he did not knowingly and voluntarily enter the plea and waive his right to appeal the denial of his motion to suppress.

Despite indicating at his change-of-plea hearing that he understood he was waiving his right to appeal the denial of his motion to suppress, Sandiford asserts that he believed that he had preserved his right to appeal the suppression issue. To support his position, he points to isolated statements the district court made during his lengthy sentencing proceedings about the possibility of appellate review. For example, after denying Sandiford's motion to reconsider the denial of the motion to suppress, the court noted that if it had made a mistake in denying the underlying motion, the error might "be corrected," which Sandiford takes to mean that he could raise the issue on direct appeal. Doc. 284 at 50. But the statements Sandiford relies upon were made after he pleaded guilty. None of the statements he points to show that he believed at the time of his guilty plea that he was retaining the right to challenge the suppression issue on appeal.

Sandiford also argues that he is not bound by the plea agreement because the government breached it. To evaluate whether the government breached a plea agreement, we identify "the scope of the government's promises and ask whether the government's actions were inconsistent with what the defendant reasonably understood when he entered his guilty plea." *United States v. Tripodis*, 94 F.4th 1257, 1261 (11th Cir. 2024) (alteration adopted) (internal quotation marks omitted). Although "plea agreements are interpreted in the same vein as contracts, we do not apply a hyper-technical reading or a rigidly literal approach in the construction of the language." *Id.* (internal quotation marks omitted). "[A] plea agreement's silence on an issue does not bind the government to any promise." *Id.* When interpreting a plea agreement, ambiguous language is construed against the government because a plea agreement waives substantial constitutional rights. *Id.* In addition, we may examine extrinsic evidence of the parties' intent to dispel any ambiguity and interpret the language of a plea agreement. *Id.*

Sandiford argues that the government breached the plea agreement when, at sentencing, it opposed his request for a three-level reduction for acceptance of responsibility. We conclude that the government did not breach the plea agreement.

Under the Sentencing Guidelines, a defendant may receive a two-level reduction in his offense level if he "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). The government may move for an additional one-level reduction if the defendant qualifies for the two-level reduction, has an offense level of 16 or

greater, and provided substantial assistance in investigating or prosecuting his offense. *Id.* § 3E1.1(b). Although a guilty plea constitutes significant evidence of acceptance of responsibility, it may be outweighed by conduct that is inconsistent with acceptance of responsibility, and a defendant is not entitled to a reduction under § 3E1.1 as a matter of right. *Id.* § 3E1.1, cmt n.3.

Here, as part of the plea agreement, the government made promises regarding credit for acceptance of responsibility at sentencing. Boiled down, it agreed that, absent "adverse information" suggesting that a reduction was unwarranted, it would not oppose Sandiford's request for a two-level reduction for acceptance of responsibility and also that it would file a motion seeking an additional one-level reduction. Doc. 95 at 4.

The government acted consistently with its obligations under this provision of the plea agreement. The initial PSR included a three-level reduction for acceptance of responsibility, and the government did not oppose this reduction on the first or second day of sentencing. It is true that on the third day of the sentencing hearing, the government moved to revoke the acceptance-of-responsibility reduction. But the government filed the motion only after learning of new information: that Sandiford had enlisted Buford to send him child pornography while incarcerated. Because the government had received new adverse information showing that Sandiford continued to engage in criminal conduct, which suggested that a downward adjustment for acceptance of

responsibility was unwarranted, it was permitted to revoke its support for the acceptance-of-responsibility reduction.

Sandiford also says that the government breached the plea agreement when it requested an obstruction-of-justice enhancement. When the government initially requested this enhancement, Sandiford was receiving credit for acceptance of responsibility. He argues that the government's request for the obstruction enhancement breached the plea agreement because it had the practical effect of making the government's agreement to support Sandiford's request for a reduction based on acceptance of responsibility "a nullity." Appellant's Br. 26. But because nothing in the plea agreement barred the government from seeking an obstruction-of-justice enhancement, we cannot say that it breached the plea agreement. *See Tripodis*, 94 F.4th at 1261.

Sandiford further asserts that the government breached the plea agreement when, at the second day of the sentencing hearing, it sought a 30-year sentence. Based on the court's guidelines determinations at that time, the government's requested sentence included an upward variance or departure. This request did not breach the plea agreement. In the plea agreement, the government did not agree to recommend a particular sentence. Instead, it reserved the right to make a recommendation that "it deem[ed] appropriate." Doc. 95 at 11. Therefore, the government did not breach the plea agreement when it argued for an upward variance or departure.

23-13131              Opinion of the Court                    19

### III.

For the above reasons, we affirm the district court.

**AFFIRMED.**