[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————————

No. 24-11909

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

THOMAS CHARLES BRIDGES,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00082-TFM-B-1

————————————————

Before JORDAN, LUCK, and TJOFLAT, Circuit Judges.

PER CURIAM:

Thomas Bridges appeals his 96-month sentence for conspiracy to commit bank fraud. He argues (1) that the District Court clearly erred in finding that he continued to engage in bank fraud while on pretrial release, (2) that the Government breached his plea agreement by informing the District Court of his continued criminal conduct, and (3) that the District Court clearly erred when it applied a two-level sentencing enhancement for having a leadership role in the conspiracy. We affirm.

## I.

Bridges was indicted for conspiracy to commit bank fraud, substantive bank fraud, and possession of counterfeited or forged securities. He was arrested, arraigned, and released on conditions requiring him to refrain from committing "any offense in violation of federal, state or local law while on release." Bridges ultimately pleaded guilty to the conspiracy charge under a written plea agreement. Under that agreement, the Government would dismiss all other charges and recommend a sentence at the low end of the applicable Guidelines range. The agreement also stated that "because Bridges recruited others to participate in the scheme, a two-level role enhancement should apply pursuant to U.S.S.G. § 3B1.1(c)" and that both parties were "free to allocute fully at the time of sentencing." Further, the corresponding factual resume stated that Bridges engaged in various acts in furtherance of the scheme,

including depositing checks, "acquir[ing] a printer and magnetic ink," and "exchang[ing] numerous text messages" with co-conspirators.

While on pretrial release, Bridges allegedly continued his fraudulent conduct. According to the Government's sentencing memorandum and supporting exhibits, a local school placed fourteen checks in the U.S. mail, which were subsequently stolen, altered and forged, and deposited into the bank accounts of various individuals who were not authorized to deposit the checks and who were not associated with the school. A bank then submitted one of the checks for inspection, and latent fingerprint analysis identified Bridges's fingerprint on the check. An inspector also found messages sent from an iCloud account bearing Bridges's name, sent while Bridges was on pretrial release, that discussed fraudulent check activities.

Bridges's presentence investigation report calculated a total offense level of 24 based on a base offense level of 25, a two-level enhancement for being a leader in the criminal activity, and a reduction of three levels because Bridges accepted responsibility. The report also calculated a criminal history category of I, a Guidelines imprisonment range of 51–63 months, and a Guidelines range of supervised release of 2–5 years.

At the sentencing hearing, Bridges objected to the two-level role enhancement to his base offense level because he merely recruited people into the scheme, claiming that recruitment is different from leadership. The Government maintained not only that

Bridges agreed to the two-level role enhancement in his plea agreement but also that recruitment into a sophisticated scheme is active leadership. The District Court concluded that the enhancement was warranted.

Bridges also asserted that the District Court should not consider any evidence related to his conduct while on pretrial release. He argued that such evidence should be considered only as it relates to the three-level sentence reduction for acceptance of responsibility, so, because the Government was not contesting whether Bridges accepted responsibility, it should not be considered at all. Bridges further argued that the Government presenting such evidence was inconsistent with its obligations under the plea agreement to recommend a sentence at the low end of the Guidelines range.

The Government responded that the evidence was relevant to the District Court's determination of an appropriate sentence, particularly to show both that Bridges should be remanded to custody immediately and that there was no basis for a downward deviation from the Guidelines range. The Government also maintained that the plea agreement expressly allowed both parties to allocute fully at sentencing. The District Court accepted the evidence, explaining that the plea agreement was not binding as to sentencing and that sentencing is "the one inescapable task that judges cannot give to anyone else." The Court also explained that the Government had a duty of candor to report such evidence to the Court and that, except for constitutional constraints, a district

court could consider "virtually anything a defendant has done" at sentencing. The District Court sentenced Bridges to 96 months imprisonment, followed by 5 years of supervised release. The Court explained that this deviation was necessary to achieve "the sentencing objectives of punishment, deterrence, and incapacitation" because Bridges "just continue[d] in the same conduct" after pleading guilty.

Bridges timely appeals.

**II.**

*A.*

Bridges first argues that the District Court clearly erred in finding that he continued to engage in criminal conduct while on pretrial release.

We review the District Court's findings of fact for clear error. *United States v. Little*, 864 F.3d 1283, 1290 (11th Cir. 2017) (citation omitted). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *Id.* (citation and internal quotation marks omitted).

"When a defendant challenges one of the factual bases of his sentence . . . the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) (citation and internal quotation marks omitted). This burden is met when the court finds, based on evidence bearing some indicia of reliability, that the

6                    Opinion of the Court                  24-11909

existence of a fact is more probable than its nonexistence. *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004).

The District Court's finding that Bridges continued his criminal conduct while on pretrial release is supported by multiple sources of reliable evidence. Bridges's fingerprint was found on one of the altered checks, and messages from an iCloud account bearing his name discussed fraudulent check activities. The check was altered and the messages were sent while Bridges was on pretrial release. Taken together, this evidence supports the District Court's finding of Bridges's continued criminal conduct by more than a preponderance. The District Court did not clearly err.

*B.*

Bridges next argues that the Government breached his plea agreement by informing the District Court of his continued criminal conduct while on pretrial release. Bridges maintains that the Government's disclosure of that information was inconsistent with its simultaneous recommendation of a sentence on the low end of the Guidelines range and was, thus, a breach of his plea agreement.

We review de novo whether the Government breached a plea agreement. *United States v. Tripodis*, 94 F.4th 1257, 1261 (11th Cir. 2024) (citation omitted). "The government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996) (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499 (1971)). However, "[t]he solemnization of a plea agreement does not preclude the

24-11909               Opinion of the Court               7

government from disclosing pertinent information to the sentencing court." *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992). And virtually all information is pertinent. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Moreover, where the Government reserves in the plea agreement the right to provide the court relevant information at sentencing, it does not breach the agreement when it does so. *United States v. Carrazana*, 921 F.2d 1557, 1569 (11th Cir. 1991). Though, the Government may breach a plea agreement when it makes the promised sentencing recommendation but then unequivocally expresses that such sentence would be inadequate. *See United States v. Malone*, 51 F.4th 1311, 1322 (11th Cir. 2022) (holding that the Government breached a plea agreement when it promised to make a certain sentencing recommendation, made that recommendation, but then stated that the recommended sentence "was not enough and that [the defendant] deserved a sentence two or three times higher," because such a statement was "at war with its 'recommendation'"). In short, "the government achieves the correct balance between its duty of candor to the sentencing court and its duty to honor commitments under a plea agreement when the government makes the necessary disclosures to the sentencing court, but nevertheless continues to advocate for the acceptance of the agreement." *Id.* at 1330 (alteration adopted) (internal quotation marks omitted); *see also United States v. Block*, 660 F.2d 1086, 1091 (5th Cir. Unit B 1981) ("A

prosecutor has a duty to insure that the court has complete and accurate information concerning the defendant, thereby enabling the court to impose an appropriate sentence. Thus if an attorney for the Government is aware that the court lacks certain relevant factual information or that the court is laboring under mistaken premises, the attorney . . . has the duty to bring the correct state of affairs to the attention of the court." (citations and internal quotation marks omitted)).

The Government did just that. It did not object to the Guidelines calculation in the presentence investigation report, and it recommended a sentence at the low end of that range. At the same time, it informed the District Court of evidence that Bridges committed additional criminal conduct while on pretrial release. This was not a renunciation of the Government's sentence recommendation; it was an exercise of the Government's right to allocate and its duty to provide the Court with complete and accurate information related to the sentencing factors listed in 18 U.S.C. § 3553(a).

Bridges likens his case—in which the Government promised to provide a recommendation at the low end of the Guidelines range, provided that recommendation, and provided other information about Bridges's conduct along with it—to a case in which the Government promised not to make a sentencing recommendation at all and then made one. This comparison is unfounded. Promising not to make a sentencing recommendation and then making one is a breach of a plea agreement. *See Santobello*, 404 U.S.

at 262 (holding that a prosecutor breached a plea agreement when he made a sentencing recommendation where the plea agreement promised that the prosecutor would make no recommendation). Providing additional information with a sentencing recommendation, while still maintaining that the recommended sentence is adequate, is not. A promise to recommend a specific sentence is not a promise to stay silent about everything else. It does not require the Government to ignore or minimize aggravating information, especially when the plea agreement expressly preserves the right to present such information.

We find no error.

## C.

Finally, Bridges argues that the District Court erred in imposing a two-level enhancement for his role as a leader in the conspiracy. The District Court's imposition of an aggravating role enhancement is a factual finding we review for clear error. *United States v. Grushko*, 50 F.4th 1, 10 (11th Cir. 2022) (citing *United States v. Martinez*, 584 F.3d 1022, 1025 (11th Cir. 2009).

"When the government seeks to apply an enhancement under the Sentencing Guidelines over a defendant's factual objection, it has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (internal quotation marks omitted). A district court can base its determination on "facts admitted by the defendant's guilty plea, undisputed statements in the [presentence investigation report], or

evidence presented at the sentencing hearing." *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021). A district court may also rely on "reasonable inference[s]" at sentencing but not inferences that are "speculative to the point of being clearly erroneous." *United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009).

A defendant earns a two-level enhancement if he "was an organizer, leader, manager, or supervisor" in the crime. U.S.S.G. § 3B1.1(c). Whether a defendant qualifies depends on many factors, including

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

*United States v. Dixon*, 901 F.3d 1322, 1348 (11th Cir. 2018) (alteration adopted); *see also* U.S.S.G. § 3B1.1, cmt. n.4. A defendant need not meet every factor to warrant the enhancement, but he ultimately must exert "some degree of control, influence, or leadership." *Martinez*, 584 F.3d at 1026 (internal quotation marks omitted).

Bridges argues that recruitment alone does not meet that standard, pointing to cases in which the defendant engaged in more than just recruitment and consequently received the leadership

enhancement. While recruitment coupled with additional actions did qualify the defendants in those cases for the enhancement, recruitment alone qualifies as well. Enticing someone to join a scheme is, at bottom, exerting influence over them. It implies decision making authority, planning, and control. It is leadership, so it satisfies the requirements for the leadership enhancement. This is especially so where the defendant agreed, in his plea agreement, that he recruited others into a conspiracy and that that alone warranted the leadership enhancement. Even still, Bridges did more than simply recruit members: he also texted co-conspirators about the operation, obtained materials necessary to print counterfeit checks, and deposited such checks at banks multiple times. The District Court did not clearly err in concluding that Bridges was a leader in the conspiracy.

### III.

The District Court did not clearly err in finding that Bridges continued to engage in criminal conduct while on pretrial release or in imposing a two-level enhancement for his leadership role in the conspiracy, nor did the Government breach his plea agreement. The District Court's judgment is affirmed.

**AFFIRMED.**