**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-10156

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SHALONDA FAISON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:22-cr-00105-RAH-JTA-2

_____

Before JORDAN, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

Shalonda Faison appeals her sentence of 28-months' imprisonment, to be followed by two years of supervised release, imposed for her conviction for conspiracy to make false statements

during the purchase of firearms, making false statements during the purchase of firearms, and selling or transferring firearms to a prohibited person, in violation of 18 U.S.C. §§ 371, 922(d)(1), & 922(a)(6).  On appeal, she argues that her sentence is a result of plain error: the district court imposed a sentence that violates her binding plea agreement with the government.  After careful review, we conclude that any error was not plain, so we affirm.[1]

Whether the terms of a binding Rule 11(c)(1)(C) plea agreement have been breached is a question of law that we review *de novo*.  *United States v. Tripodis*, 94 F.4th 1257, 1261 (11th Cir. 2024).  However, where, as here, a party "fails to preserve an objection in the district court," we review that issue only for plain error.  *United States v. Defilippis*, 174 F.4th 1291, 1302, 1307–08 (11th Cir. 2026).  "Plain error occurs where there is an '(1) error, (2) that is plain, and (3) that affects substantial rights.'"  *Id*. at 1307–08 (quoting *United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022)).  "If a defendant establishes these prerequisites," we may correct an unpreserved error if we conclude that it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id*. at 1308 (quoting *Utsick*, 45 F.4th at 1332).  For an error to be a "plain" error,

---

[1] This appeal comes to us with a convoluted procedural history.  *See, e.g., United States v. Faison*, No. 25-10156, 2026 U.S. App. LEXIS 7525 (11th Cir. Mar. 12, 2026) (order) (denying the government's motion to dismiss this appeal); *United States v. Faison*, No. 23-12352, 2024 WL 3595502 (11th Cir. July 31, 2024) (unpublished) (vacating Faison's prior guilty plea in a previous appeal).  For the sake of brevity, we omit a lengthy recitation of the facts, as we write only for the parties who are already familiar with these proceedings.

it must be "'clear' or 'obvious.'" *Esteras v. United States*, 606 U.S. 185, 203 (2025) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

In assessing whether a plea agreement has been breached, we look to whether what has occurred was "inconsistent with what the defendant reasonably understood when [s]he entered [her] guilty plea." *United States v. Al-Arian*, 514 F.3d 1184, 1191 (11th Cir. 2008) (quoting *In re Arnett*, 804 F.2d 1200, 1202–03 (11th Cir. 1986)). We "use objective standards to resolve a dispute over the meaning of terms in a plea agreement." *Id.* "When the plea agreement is ambiguous, it is construed against the government." *Tripodis*, 94 F.4th at 1261. When we are confronted with an ambiguous term, we may "examine extrinsic evidence of the parties' intent to help dispel the ambiguity and interpret the plea agreement language." *Id.*; *see also Extrinsic Evidence*, BLACK'S LAW DICTIONARY (12th ed. 2025) ("Evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as . . . the circumstances surrounding the agreement.").

The parties' dispute in this case centers on one provision of the plea agreement, which reads:

> Pursuant to Rule 11(c)(1)(C), the government agrees that a sentence of 28 months is the appropriate disposition of the case.

Faison contends that this provision in the plea agreement means that the parties agreed she could receive only 28 months' custody, *i.e.*, 28 months' imprisonment with no supervised release to follow

or 28 months of combined supervised release plus incarceration. The government argues that the language in the agreement simply means that the district court would impose a 28-month term of incarceration and that the agreement is silent on supervised release. Moreover, it notes that, if we look to extrinsic evidence, the parties shared an understanding that the district court would impose the same punishment that we previously vacated in 2024, which included a two-year term of supervised release.

The parties' relative arguments about how the plain text of the agreement should be read each have some sway. *Cf. Tripodis*, 94 F.4th at 1262 (noting that "the question of breach here is not frivolous"). We have previously described supervised release as part of a defendant's "sentence." *See, e.g., United States v. Crisp*, 454 F.3d 1285, 1288 (11th Cir. 2006) ("The court also imposed as part of the sentence a five-year term of supervised release."). So has Congress. *See, e.g.*, 18 U.S.C. § 3583(a) ("The court . . . may include *as a part of the sentence* a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ." (emphasis added)); *United States v. Jenkins*, 42 F.3d 1370, 1371 (11th Cir. 1995) ("[Section] 3583(a) allows the district court to include supervised release as 'part of the sentence,' not as part of the imprisonment."). All of this is for good reason, as the word "sentence" generally refers to a "judgment that a court formally pronounces after finding a criminal defendant guilty [or] the punishment imposed on a criminal wrongdoer." *Sentence*, BLACK'S LAW DICTIONARY (12th ed. 2025). Supervised release comfortably falls into this plain meaning. *See United States v. Talley*, 83 F.4th 1296,

1302 (11th Cir. 2023) (explaining a defendant faces "a continuing restraint on [her] liberty" during a supervised release term and is, therefore, "serving [her] sentence" while on supervised release). All of these sources lend strong support to Faison's view that the agreement allows for a maximum "sentence" of 28 months, and that "sentence" might include either imprisonment or supervised release, or both.[2]

However, in support of the government's view, we have occasionally used "sentence" in a narrower manner to describe a term of imprisonment, and have, perhaps colloquially, described supervised release as something separate from a defendant's "sentence." *See, e.g., United States v. Wilson*, 901 F.2d 1000, 1002 (11th Cir. 1990) ("The court also imposed a five year period of supervised release after the completion of the sentence."). If Faison's plea agreement is read consistent with this more colloquial use of the word "sentence," then it is silent on what term of supervised release Faison should receive. When a plea agreement is silent on whether supervised release should be imposed, the government is not precluded from advocating for it to be imposed and a district court is not precluded from imposing it. *Tripodis*, 94 F.4th at 1262 ("There is no promise within the plea agreement regarding supervised release. The agreement's silence did not bind the government to any promise regarding supervised release."); *cf.* FED. R. CRIM. P. 11(c)

---

[2] In addition, we construe ambiguities in plea agreements in favor of criminal defendants and against the government. *Tripodis*, 94 F.4th at 1261; *see also United States v. Hardman*, 778 F.3d 896, 900 (11th Cir. 2014).

(providing that only "recommendation[s]" and "request[s]" by both the parties "bind[] the court once the court accepts the [Rule 11(c)] plea agreement").

In light of the foregoing, it is at least arguable that the agreement is ambiguous. When a plea agreement is ambiguous, a court does not err by looking to extrinsic evidence to define ambiguous terms in the agreement. *Tripodis*, 94 F.4th at 1261. The available "relevant extrinsic evidence" strongly suggests that the parties' intent, in entering into the Rule 11(c)(1) plea agreement, was for the district court to re-impose the sentence that we previously vacated in 2024, which included supervised release. *Id.* at 1262. Indeed, that was obviously the district court's understanding of the plea agreement at Faison's resentencing, and the parties each agreed with the court's understanding.[3] For these reasons, even if the plea agreement might be best read to limit Faison's sentencing exposure to 28 months' total (including imprisonment and supervised release), we cannot say that the district court's view of the agreement, in light of the available extrinsic evidence, *id.*, was so obviously wrong as to establish a plain error, *Esteras*, 606 U.S. at 203

---

[3] Near the beginning of the sentencing hearing, the following exchange occurred:

> The Court: "Okay. And it appears what the parties have agreed to in the plea agreement is a sentence consistent with the sentence I previously gave; is that correct?"

> Counsel for Faison: "That is also correct, Your Honor."

> Counsel for the Government: "Correct."

(explaining an unpreserved error must be "clear" or "obvious" to be plain).

As we have said before, "in the future, the government should make it clear in these circumstances what it is promising—and what it is not—to the defendant" and to the district court. *Tripodis*, 94 F.4th at 1262. "As the government is the drafter of the plea agreement, it should dispel any alleged ambiguities by clearly indicating whether it intends to recommend supervised release." *Id.* at 1262–63. Still, under these circumstances, Faison has not shown a reversible plain error. Accordingly, we affirm.

**AFFIRMED.**